United States District Court
Southern District of Texas
**ENTERED**
August 31, 2026
Nathan Ochsner, Clerk

**UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
GALVESTON DIVISION**

| | | |
|---|---|---|
| BETTY J. PARRIMORE, | § | |
| | § | |
| Plaintiff. | § | |
| | § | |
| V. | § | CIVIL ACTION NO. 3:26-cv-00032 |
| | § | |
| GALVESTON COUNTY, TEXAS, *et al.*, | § | |
| | § | |
| | § | |
| Defendants. | § | |

**MEMORANDUM OPINION, ORDER, AND RECOMMENDATION**

Pending before me are two motions: (1) Defendants' Rule 12(b)(1) and (b)(6) motion to dismiss; and (2) Defendants' motion to strike Plaintiff's exhibits. *See* Dkts. 24, 26. I recommend that Defendants' motion to dismiss be granted. Defendants' motion to strike is denied.[1]

**BACKGROUND**[2]

Plaintiff Betty Parrimore began working as an attorney for Defendant Galveston County Misdemeanor Mental Health Public Defender's Office (the "Office") on July 8, 2021. Defendant Thomas Wooten, the Office's Chief Public Defender, was Parrimore's supervisor.

On June 1, 2023, Parrimore informed Wooten that she needed to take medical leave. Parrimore had a surgery scheduled on June 8, 2023. Wooten was scheduled to be out of the office on June 8, 2023, because his wife was also scheduled for surgery. The office had only three attorneys at that time. To ensure that at least two attorneys were in the office, Parrimore rescheduled her surgery to

[1] "District courts in the Fifth Circuit have universally treated motions to strike evidence as non-dispositive matters that a magistrate judge may rule on by order as opposed to a report and recommendation." *Dulcich, Inc. v. DaPron*, No. 3:23-cv-00405, 2025 WL 976598, at *1 n.1 (S.D. Tex. Apr. 1, 2025).

[2] This section is taken from the live pleading, Plaintiff's first amended complaint. Dkt. 23.

the following week. Parrimore acknowledges that Wooten did not ask her to change her surgery date. She moved the surgery date on her own volition.

On June 14, 2023, Parrimore took medical leave under the Family and Medical Leave Act ("FMLA"). On July 27, 2023, while Parrimore was on leave, Parrimore contacted Wooten regarding her mother's passing and bereavement leave. At that time, Wooten informed Parrimore that he had a problem with her work, and that he would be sending her a letter.

On August 18, 2023, Wooten emailed Parrimore a letter stating that she had failed to file withdrawals in at least seven of her cases and accusing Parrimore of costing Galveston County money for attending an unauthorized continuing legal education ("CLE") program. The letter warned Parrimore that further failures to follow office rules would result in her termination. Parrimore claims that Wooten's accusations were false.

On August 21, 2023, Parrimore returned to work from her medical leave. According to Parrimore, Wooten fostered a hostile work environment by cursing at Parrimore and treating her differently than other employees when she needed to leave work. Wooten also implemented new office rules that applied to everyone. These included: changing the process of handling cases and their timeframes, prohibiting employees from wearing sneakers in the office, and requiring employees to keep their office doors open except during lunch breaks.

On February 5, 2024, Wooten terminated Parrimore. On February 6, 2024, Parrimore filed for unemployment benefits with the Texas Workforce Commission ("TWC"). The benefits were initially denied because Wooten informed the TWC representative that Parrimore was discharged due to misconduct. Parrimore appealed the TWC's decision and requested a hearing. At the hearing, Wooten stated that Parrimore was terminated because she could not do the job. Based on that assertion, the TWC reversed its decision.

On February 2, 2026, Parrimore instituted this lawsuit against Galveston County ("the County"), Wooten, and the Office. Parrimore is representing herself

in this litigation. Parrimore brings FMLA claims against Defendants for (1) interference, (2) retaliation, and (3) harassment/hostile work environment. Defendants move to dismiss Parrimore's claims, arguing that she fails to state a claim that would entitle her to relief.[5]

## RULE 12(b)(6) MOTION TO DISMISS

A defendant may move to dismiss a complaint when a plaintiff fails "to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* (quoting *Twombly*, 550 U.S. at 556). Conversely, "when the allegations in a complaint, however true, could not raise a claim of entitlement to relief, this basic deficiency should be exposed at the point of minimum expenditure of time and money by the parties and the court." *Twombly*, 550 U.S. at 558 (cleaned up).

When evaluating a Rule 12(b)(6) motion, I accept "all well-pleaded facts as true and view[] those facts in the light most favorable to the plaintiff." *Cummings v. Premier Rehab Keller, P.L.L.C.*, 948 F.3d 673, 675 (5th Cir. 2020) (quotation omitted). I "do not, however, accept as true legal conclusions, conclusory statements, or naked assertions devoid of further factual enhancement." *Benfield v. Magee*, 945 F.3d 333, 336–37 (5th Cir. 2019) (cleaned up). "Threadbare recitals

---

5 Defendants move to dismiss under Rules 12(b)(1) and 12(b)(6). *See* Dkt. 24. But Defendants do not explain how Rule 12(b)(1) applies. Because Defendants substantively argue for dismissal under only the Rule 12(b)(6) standard, I construe Defendants' motion only as a Rule 12(b)(6) motion to dismiss for failure to state a claim.

of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678. In analyzing a motion to dismiss, I may "rely on documents incorporated into the complaint by reference." *Dorsey v. Portfolio Equities, Inc.*, 540 F.3d 333, 338 (5th Cir. 2008) (quotation omitted). If matters beyond the pleadings are presented on a motion to dismiss, I have "complete discretion to exclude them." *Allen v. Hays*, 812 F. App'x. 185, 189 (5th Cir. 2020) (quotation omitted).

Typically, the Fifth Circuit "hold[s] pro se plaintiffs to a more lenient standard than lawyers when analyzing complaints." *Chhim v. Univ. of Tex. at Austin*, 836 F.3d 467, 469 (5th Cir. 2016). But "the liberal pleading standard for pro se litigants does not invariably apply when the litigant is a licensed attorney." *Spence v. United States Dep't of Veterans Affs.*, 109 F.4th 531, 538 (D.C. Cir. 2024); *see also Olivares v. Martin*, 555 F.2d 1192, 1194 n.1 (5th Cir. 1977) ("We cannot accord [an attorney] the advantage of the liberal construction of his complaint normally given pro se litigants, because he is a licensed attorney." (cleaned up)).

**DEFENDANTS' MOTION TO STRIKE**

Before considering the merits of Defendants' motion to dismiss, I must address Defendants' motion to strike seven of the nine exhibits that Parrimore attached her response to the motion to dismiss. *See* Dkt. 26.

Specifically, Parrimore attaches the following exhibits to her response: (1) a June 29, 2023 memo regarding unacceptable conduct and case withdrawals sent from Wooten; (2–3) two motions to withdraw as counsel in Galveston County court cases; (4) a case information sheet for a state court criminal case; (5) a February 3, 2023 email from Parrimore to Wooten regarding CLE courses; (6) a screenshot of text messages; (7) an issue decision log reflecting that Parrimore was fired for insubordination; (8) a TWC Appeal Tribunal Decision; and (9) a screenshot of an incoming call. *See* Dkt. 25 at 23–35. Defendants ask me to strike

all but the February 3, 2023 email and the issue decision log under Rule 12(f). *See* Dkt. 26 at 1.

Rule 12(f) permits a district court to "strike from a *pleading* an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." (emphasis added). Rule 12(f) is an improper procedural vehicle to exclude Parrimore's exhibits because Parrimore's response to Defendants' motion to dismiss is not a pleading. *See* Fed. R. Civ. P. 7(a). Courts have widely recognized that motions, briefs, and memoranda are not subject to Rule 12(f) motions to strike. *See Damon J. Baldone, LLC v. Starr Surplus Lines Ins. Co.*, No. CV 22-1903, 2026 WL 279934, at *1 n.3 (E.D. La. Feb. 3, 2026) (collecting cases). For that reason, Defendants' motion to strike is denied.

I have complete discretion, however, to exclude matters outside of the pleadings. I will not exclude the TWC Appeal Tribunal Decision because Parrimore incorporated this document by reference into her complaint. *See* Dkt. 23 at 7–8. As for the June 29, 2023 memo; motions to withdraw; case information sheet; screenshot of text messages; and unidentified call log, Parrimore makes no reference to these documents in her complaint and offers no explanation for why they should be considered in addressing Defendants' motion to dismiss. Accordingly, those exhibits are excluded for purposes of evaluating Defendants' motion to dismiss.

## ANALYSIS

### A. THE OFFICE IS NOT A JURIDICAL ENTITY CAPABLE OF BEING SUED

Defendants argue that the Office should be dismissed from this case because it lacks the capacity to be sued. *See* Dkt. 24 at 26. Parrimore provides no response to Defendants' argument.

The capacity of an entity to sue or be sued is determined "by the law of the state where the court is located." Fed. R. Civ. P. 17(b)(3). "In order for a plaintiff to sue a [municipal] department, it must enjoy a separate legal existence." *Darby v. Pasadena Police Dep't*, 939 F.2d 311, 313 (5th Cir. 1991) (quotation omitted).

Parrimore "bears the burden of showing that the 'true political entity has taken explicit steps to grant the servient agency with jural authority.'" *Martinez v. Zapata County*, No. 5:23-cv-00050, 2024 WL 1315898, at *5 (S.D. Tex. Mar. 27, 2024) (cleaned up) (quoting *Darby*, 939 F.2d at 313).

Here, Parrimore has not shown that the Office is a separate juridical entity capable of being sued. Parrimore points to nothing suggesting that the true political entity—Galveston County—has taken explicit steps to grant the Office jural authority. Accordingly, her claims against the Office should be dismissed. *See Jones v. Walker Cnty. Sheriff Dep't*, No. 4:22-cv-02686, 2023 WL 4163047, at *4 (S.D. Tex. Apr. 27, 2023).

### B. Parrimore Fails to State a Claim Under the FMLA

Parrimore brings three claims under the FMLA: (1) interference; (2) retaliation; and (3) harassment/hostile work environment. *See* Dkt. 23 at 8–17. I address each claim in turn.

#### *1. FMLA Interference*

The FMLA makes it unlawful for any employer to "interfere with, restrain, or deny the exercise of or the attempt to exercise, any right provided under [the FMLA]." 29 U.S.C. § 2615(a)(1). To plead an FMLA interference claim, Parrimore must allege that: (1) she "was an eligible employee"; (2) her "employer was subject to FMLA requirements"; (3) she "was entitled to leave"; (4) she "gave proper notice" of "her intention to take FMLA leave"; and (5) her employer denied her the benefits to which she was entitled under the FMLA. *Caldwell v. KHOU-TV*, 850 F.3d 237, 245 (5th Cir. 2017). Parrimore must also show that the Defendants' alleged violation "prejudiced" her. *Cuellar v. Keppel Amfels, L.L.C.*, 731 F.3d 342, 347 (5th Cir. 2013).

Parrimore claims that Defendants "interfered with [her] FMLA leave by contacting [her] while on leave in a hostile manner with unwarranted criticism and threatening [her] with termination based on untrue accusations." Dkt. 23 at 9. Specifically, Parrimore alleges that: (1) on June 1, 2023, she "had to change her

surgery as [Wooten] made no attempt to suggest he change in his wife's scheduled surgery"; (2) on July 27, 2023, "Wooten had negative communication with [Parrimore] before returning to work causing significant stress and anxiety"; and (3) on August 18, 2023, Wooten "again caused [Parrimore] significant stress and anxiety with untruthful allegations made by . . . Wooten in his letter." *Id.* at 14. Additionally, Parrimore alleges that Wooten "clearly acted willfully in violating the FMLA in making untrue accusations against [Parrimore] that could clearly be determined as untrue with records and emails." *Id.* at 15. Parrimore's interference claim must be dismissed because she does not allege the fifth element: that Defendants denied her benefits to which she was entitled under the FMLA.

As for Parrimore's contention that she was forced to change her surgery date, such an assertion is contradicted by her own pleadings. Parrimore alleges that Wooten "didn't ask me to change my surgery date" and that Parrimore voluntarily rescheduled her surgery date for June 15, 2023. *Id.* at 2. Stated simply, Parrimore was not denied any FMLA benefit when she voluntarily rescheduled her surgery.

As for Wooten's alleged negative communications and untruthful statements, Parrimore fails to explain how such actions constitute a denial of benefits. At most, Wooten's communications amount to de minimis intrusions on Parrimore's medical leave. *See Ray v. Compass Bank*, No. 3:06-cv-1153, 2007 WL 9711686, at *5 (N.D. Tex. May 24, 2007), *aff'd*, 256 F. App'x. 709 (5th Cir. 2007). Courts have recognized that "[d]e minimis contact between an employer and employee on FMLA leave does not amount to interference." *Lopez v. Tex. Christian Univ.*, No. 4:22-cv-00171, 2022 WL 3227854, at *2 (N.D. Tex. Aug. 10, 2022). Further, Parrimore does not allege that she was denied leave or was not reinstated to her position after taking leave. "The Fifth Circuit has held that when a plaintiff receives the leave [she] requests and returns to the job [she] left, [she] has no interference claim as a matter of law." *Lister v. Nat'l Oilwell Varco, L.P.*, No. CIV.A. H-11-01, 2013 WL 5515196, at *29 (S.D. Tex. Sept. 30, 2013) (citing *De La*

*Garza–Crooks v. AT&T*, No. 00–50969, 2001 WL 361099, at *1 (5th Cir. Mar. 22, 2001)).

### *2. FMLA Retaliation*

The FMLA makes it unlawful for any employer "to discharge or in any other manner discriminate against any individual for opposing any practice made unlawful by [the FMLA]." 29 U.S.C. § 2615(a)(2). To establish a prima facie case of retaliation under the FMLA, Parrimore must show that: "(1) she engaged in protected activity; (2) the employer took a materially adverse action against her; and (3) a causal link exists between her protected activity and the adverse action." *Wheat v. Fla. Par. Juv. Just. Comm'n*, 811 F.3d 702, 705 (5th Cir. 2016). "Retaliation claims under the FMLA without direct evidence of discrimination are analyzed under the *McDonnell Douglas* burden-shifting framework." *Besser v. Tex. Gen. Land Off.*, 834 F. App'x. 876, 882 (5th Cir. 2020). Under that framework, "[i]f the plaintiff states a prima facie claim, the burden shifts to the employer to articulate a legitimate . . . nonretaliatory reason for the termination. Once the employer has done so, the plaintiff must show by a preponderance of the evidence that the employer's reason is a pretext for . . . retaliation." *Hester v. Bell-Textron, Inc.*, 11 F.4th 301, 305 (5th Cir. 2021) (quotations omitted).

The first prong is not in dispute: Parrimore engaged in protected activity by taking FMLA leave. Rather, the parties dispute: (a) whether Parrimore suffered an adverse employment action; and (b) whether there is a causal link between that action and Parrimore's FMLA leave. I address each issue in turn.

#### a. Adverse Employment Action

Parrimore alleges that Wooten's July 27, 2023 and August 18, 2023 communications complaining about Parrimore's work were adverse employment actions. Parrimore also alleges that she suffered an adverse employment action when Wooten terminated her employment.

"A retaliation claim may rest on an action that a reasonable employee would have found to be materially adverse, which in this context means it well might have

dissuaded a reasonable worker from making or supporting a charge of discrimination." *Aryain v. Wal-Mart Stores Tex. LP*, 534 F.3d 473, 484 (5th Cir. 2008) (cleaned up). At the same time, "[c]omplaints about an employer's actions that are not unlawful under the FMLA cannot form the basis of a retaliation claim." *Besser*, 834 F. App'x. at 882–83.

Wooten's communications expressing his dissatisfaction with Parrimore's work have nothing to do with her medical leave and are not adverse actions. *See Puleo v. Texana MHMR Ctr.*, 187 F. Supp. 3d 769, 782 (S.D. Tex. 2016) ("[A]llegations of unwarranted complaints about the quality of the plaintiff's work and unnecessary job scrutiny and criticisms are not considered adverse employment actions."). Thus, those actions cannot form the basis of an FMLA retaliation claim. *See Besser*, 834 F. App'x. at 882–83. On the other hand, the termination of Parrimore's employment is a clear adverse employment action. Accordingly, I must now determine whether Parrimore has alleged sufficient facts to support a plausible inference that her FMLA leave was causally connected to the termination of her employment.

**b. Causal Connection**

To plead causation, Parrimore "does not have to show that the protected activity is the only cause of her termination," but must "show that the protected activity and the adverse employment action are not completely unrelated." *Mauder v. Metro. Transit Auth.*, 446 F.3d 574, 583 (5th Cir. 2006). As the Fifth Circuit has explained:

> "When evaluating whether the adverse employment action was causally related to the FMLA protection, the court shall consider the temporal proximity between the FMLA leave, and the termination." The Supreme Court has acknowledged that when the temporal proximity is "very close," proximity alone suffices to establish causation in a prima facie case of retaliation.

*Besser*, 834 F. App'x. at 884 (cleaned up) (quoting *Mauder*, 446 F.3d at 583, and *Clark Cnty. Sch. Dist. v. Breeden*, 532 U.S. 268, 273–74 (2001)). When the termination is not "very close" to the employee's FMLA leave, the employee must

offer additional facts supporting a causal link. *See Feist v. La., Dep't of Just., Off. of the Atty. Gen.*, 730 F.3d 450, 454 (5th Cir. 2013) ("[A] five month lapse is not close enough without other evidence of retaliation").

Parrimore started her medical leave on June 14, 2023. Her employment was terminated approximately 236 days later, on February 5, 2024. This far exceeds the "two and one-half months" that the Fifth Circuit has previously recognized as not close enough to satisfy the causation element through temporal proximity alone. *Besser*, 834 F. App'x. at 885 (holding that "two and one-half months between the protected activity and the adverse employment decision, standing alone, is not within the 'very close' proximity that is necessary to establish causation"). As a result, Parrimore must offer facts to permit a reasonable inference that her medical leave and the termination of her employment are causally connected.

In evaluating the claimed causal connection, I may look to (1) Parrimore's "past disciplinary record," (2) whether Defendants followed a policy in penalizing Parrimore, and (3) the "temporal proximity" between Parrimore's protected activity and the adverse employment action. *Schroeder v. Greater New Orleans Fed. Credit Union*, 664 F.3d 1016, 1024 (5th Cir. 2011).

Parrimore's allegations do not support an inference that her employment was terminated because she took FMLA leave. Although Parrimore disputes the validity of Wooten's accusations about Parrimore's performance and behavior, she alleges no facts connecting those accusations or the termination of her employment to her FMLA leave. Parrimore also does not allege facts suggesting that Wooten departed from stated policies in a manner that supports an inference of retaliation. Rather, according to the amended complaint, Wooten had previously warned Parrimore that violations of the Office's rules concerning CLE attendance could result in termination. Parrimore notes that Wooten's explanation for her termination changed in the TWC hearing. *See* Dkt. 23 at 8. But Parrimore alleges

no facts showing that the reason her employment was terminated was in any way connected to her FMLA leave.

Parrimore spends much of her amended complaint noting that Wooten made "new rules" once Parrimore returned from her medical leave, such as not allowing sneakers to be worn in the office and not allowing employees to close their office doors unless they were on a lunch break. Dkt. 23 at 4–5. Aside from the fact that the new rules applied to all Office attorneys, such generalized workplace complaints are "completely unrelated" to Parrimore's medical leave. *Besser*, 834 F. App'x. at 882. That Wooten instituted new workplace policies over time does not demonstrate any causal link between Parrimore's medical leave and the termination of her employment.

### *3. FMLA Harassment/Hostile Work Environment*

Parrimore also purports to assert an FMLA harassment/hostile work environment claim. Because the Fifth Circuit has not recognized a cause of action for harassment/hostile work environment under the FMLA, Parrimore cannot state such a claim.

In support of her FMLA harassment/hostile work environment claim, Parrimore cites *Harris v. Forklift Systems, Inc.*, 510 U.S. 17 (1993). *See* Dkt. 25 at 15. *Harris* concerns a Title VII hostile work environment claim; it has nothing to do with the FMLA. Parrimore offers no Fifth Circuit authority recognizing a hostile work environment or harassment claim under the FMLA. To the contrary, courts that have confronted the issue have refused to recognize such a claim. *See Butler v. Collins*, No. 3:18-cv-00037, 2023 WL 318472, at *20 (N.D. Tex. Jan. 19, 2023) (declining to recognize FMLA harassment claim), *aff'd*, No. 23-10072, 2025 WL 1753612 (5th Cir. June 25, 2025); *see also Smith-Schrenk v. Genon Energy Servs., L.L.C.*, No. CIV.A. H-13-2902, 2015 WL 150727, at *4 n.60 (S.D. Tex. Jan. 12, 2015) ("Plaintiff has not cited to and the court has not found any case wherein a federal court has recognized a FMLA cause of action based on hostile environment harassment."). Because Parrimore identifies no authority establishing that a

harassment/hostile work environment claim is cognizable under the FMLA, that claim should be dismissed.[6]

**CONCLUSION**

For the reasons discussed above, I recommend that Defendants' motion to dismiss (Dkt. 24) be granted. Defendants' motion to strike (Dkt. 26) is denied.

The parties have 14 days from service of this Memorandum and Recommendation to file written objections. *See* 28 U.S.C. § 636(b)(1)(C); Fed. R. Civ. P. 72(b)(2). Failure to file timely objections will preclude appellate review of factual findings and legal conclusions, except for plain error.

SIGNED this 31st day of August 2026.

ANDREW M. EDISON
UNITED STATES MAGISTRATE JUDGE

[6] Because Parrimore fails to state a claim under the FMLA, I do not reach Wooten's qualified immunity arguments.